# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **KATHERINE RODERICK,** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | **Case No. _____** |
| | § | |
| (1) **ZHEJIANG HUAHAI** | § | **ATTORNEYS LIEN CLAIMED** |
| **PHARMACEUTICAL CO.** | § | **JURY TRIAL DEMANDED** |
| **LTD.,** | § | |
| (2) **HUAHAI US INC.,** | § | |
| (3) **PRINSTON** | § | |
| **PHARMACEUTICAL INC.** | § | |
| **D/B/A SOLCO HEALTHCARE** | § | |
| **LLC,** | § | |
| (4) **SOLCO HEALTHCARE US,** | § | |
| **LLC,** | § | |
| (5) **TEVA PHARMACEUTICAL** | § | |
| **INDUSTRIES, LTD,** | § | |
| (6) **TEVA PHARMACEUTICALS** | § | |
| **USA, INC.,** | § | |
| (7) **HETERO LABS, LTD,** | § | |
| (8) **HETERO DRUGS, LIMITED,** | § | |
| (9) **HETERO USA INC.,** | § | |
| (10) **CAMBER** | § | |
| **PHARMACEUTICALS, INC.,** | § | |
| (11) **MYLAN LABORATORIES,** | § | |
| **LTD.,** | § | |
| (12) **MYLAN N.V.,** | § | |
| (13) **MYLAN PHARMACEUTICALS** | § | |
| **INC.,** | § | |
| (14) **AUROBINDO PHARMA, LTD.,** | § | |
| (15) **AUROBINDO PHARMA** | § | |
| **U.S.A., INC.,** | § | |
| (16) **AUROLIFE PHARMA LLC,** | § | |

| | | |
|---|---|---|
| (17) | ACTAVIS LLC, | § |
| (18) | ARROW PHARM MALTA | § |
| (19) | LTD., | § |
| (20) | ACTAVIS PHARMA, INC., | § |
| (21) | TORRENT | § |
| | PHARMACEUTICALS, LTD, | § |
| (22) | TORRENT PRIVATE LIMITED, | § |
| (23) | TORRENT PHARMA INC., | § |
| (24) | WALGREENS BOOTS | § |
| | ALLIANCE, INC., | § |
| (25) | CVS HEALTH | § |
| | CORPORATION, | § |
| (26) | WALMART INC., | § |
| (27) | KONINKILIJKE PHILIPS N.V., | § |
| (28) | PHILIPS NORTH AMERICA | § |
| | LLC, | § |
| (29) | PHILIPS HOLDING USA INC., | § |
| (30) | PHILIPS RS NORTH | § |
| | AMERICA, | § |
| (31) | PHILIPS RS NORTH | § |
| | AMERICA HOLDING | § |
| | CORPORATION, | § |
| (32) | POLYMER MOLDED | § |
| | PRODUCTS LLC, and | § |
| (33) | POLYMER TECHNOLOGIES, | § |
| | | § |
| | Defendants | § |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiff Katherine Roderick ("Roderick" or "Plaintiff") files this Original Complaint against Defendants on personal knowledge as to all facts regarding herself and on information and belief as to all other matters, as follows:

## I.

## PARTIES

**A. Plaintiff**

1.      Plaintiff Katherine Roderick is a citizen and resident of the State of Oklahoma.

**B. Defendants**

**1.  CPAP Machine Defendants (Philips Defendants)**

2.      Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational publicly traded company having its principal executive offices at Philips Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands.  At all times material hereto, Royal Philips has been the ultimate parent company of the Philips Group of healthcare technology businesses and has controlled and overseen all aspects of the Philips businesses worldwide, including the design, manufacture, and distribution of defective CPAP machines containing toxic PE-PUR foam. Royal Philips conducts substantial business in Oklahoma through its subsidiaries, distribution networks, and direct sales, and has sufficient minimum contacts with Oklahoma to be subject to personal jurisdiction in this Court.

3.     Defendant Philips North America LLC ("Philips NA") is a Delaware limited liability company incorporated on August 6, 1987, with its principal place of business at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  At all times material hereto, Philips NA has been a wholly-owned subsidiary of Royal Philips and has been engaged in the marketing, distribution, and sale of defective CPAP machines, including the recalled System One (60 series) CPAP Machine, in Oklahoma and throughout the United States.

4.     Defendant Philips Holding USA Inc. ("Philips USA") is a Delaware corporation incorporated on July 18, 1995, with its principal place of business at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141.  At all times material hereto, Philips USA has been a holding company that is 100% owned by Royal Philips and has managed the operations of Royal Philips' various lines of business, including the CPAP machine operations that resulted in harm to Plaintiff.

5.     Defendant Philips RS North America ("Philips RS") is a Delaware limited liability company incorporated on February 22, 1984, with its principal place of business at 6501 Living Place, Pittsburgh, Pennsylvania 15206.  At all times material hereto, Philips RS has been 100% owned by Philips RS North America Holding Corporation and has been engaged in the design, manufacture, and distribution of defective CPAP machines. Philips RS formerly operated under the business name Respironics, Inc., which was acquired by Royal Philips in 2008.

6.     Defendant Philips RS North America Holding Corporation ("Philips RS Holding") is a Delaware corporation incorporated on October 31, 2020, with its

principal place of business at 222 Jacobs Street, Cambridge, Massachusetts 02141. At all times material hereto, Philips RS Holding has been wholly owned by Philips USA and has participated in the enterprise that manufactured and distributed defective CPAP machines.

7.    Defendant Polymer Molded Products LLC ("PMP") is a Delaware limited liability company with its principal place of business at 10 Easy Street, Bound Brook, New Jersey 08805. At all times material hereto, PMP has been a molded polyurethane foam manufacturer that, directly or through intermediaries, provided Philips with the defective PE-PUR foam that was used in the recalled CPAP devices that harmed Plaintiff.

8.    Defendant Polymer Technologies, Inc. ("PolyTech") is a Delaware corporation with its principal place of business at 420 Corporate Boulevard, Newark, Delaware 19702. At all times material hereto, PolyTech has been engaged in providing, directly or through intermediaries, the defective PE-PUR foam to Philips for use in the recalled CPAP devices, despite knowing or having reason to know of the foam's propensity to degrade and emit toxic substances.

9.    At all times material hereto, each of the above-named Philips Defendants acted as the agent and alter ego of one another and operated as a unified enterprise in the design, manufacture, marketing, and distribution of the defective CPAP machines that caused harm to Plaintiff. Defendants Royal Philips, Philips NA, Philips USA, Philips RS, Philips RS Holding, PMP, and PolyTech are collectively referred to herein as the "Philips Defendants."

## 2. Valsartan Drug Defendants

### (a) Active Pharmaceutical Ingredient Manufacturer Defendants

#### (1) Zhejiang Huahai Pharmaceutical Co, Ltd. Entities

10.     Defendant Zhejiang Huahai Pharmaceutical Co., Ltd. ("ZHP") is a Chinese corporation with its principal place of business at Xunqiao, Linhai, Zhejiang 317024, China, and a United States headquarters in 2009 and 2002 Eastpark Boulevard, Cranbury, New Jersey 08512.  At all times material hereto, ZHP has been engaged in manufacturing active pharmaceutical ingredients for valsartan-containing drugs and has regularly conducted business throughout the United States, including in Oklahoma, through its subsidiaries and distribution networks.

11.     Defendant Huahai US Inc. ("Huahai US") is a New Jersey corporation with its principal place of business at 2002 Eastpark Boulevard, Cranbury, New Jersey 08512.  At all times material hereto, Huahai US has been the wholly-owned subsidiary of ZHP and has been engaged in the manufacture, sale, and distribution of contaminated, adulterated, and/or misbranded generic valsartan-containing drugs in the United States, including Oklahoma.

12.     Defendant Prinston Pharmaceutical Inc. d/b/a Solco Healthcare LLC ("Prinston") is a Delaware corporation with its principal place of business at 2002 Eastpark Boulevard, Cranbury, New Jersey 08512.  At all times material hereto, Prinston has been a majority-owned subsidiary of ZHP and has been engaged in

the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded generic valsartan-containing drugs in the United States.

13.     Defendant Solco Healthcare US, LLC ("Solco") is a Delaware limited liability company with its principal place of business at 2002 Eastpark Boulevard, Cranbury, New Jersey 08512.   At all times material hereto, Solco has been a wholly-owned subsidiary of Prinston and ZHP and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded generic valsartan-containing drugs in the United States.

14.     Collectively, ZHP, Huahai US, Prinston, and Solco are referred to herein as the "ZHP Defendants."  At all times material hereto, the ZHP Defendants have operated as a unified enterprise and have manufactured valsartan-containing drugs with NDMA levels hundreds of times higher than acceptable limits for human consumption.

**(2)** Hetero Labs, Ltd. Entities

15.     Defendant Hetero Labs, Ltd. ("Hetero Labs") is a foreign corporation with its principal place of business at 7-2-A2, Hetero Corporate, Industrial Estates, Sanath Nagar, Hyderabad 500 018, Telangana, India.  At all times material hereto, Hetero Labs has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded valsartan-containing drugs.

16.     Defendant Hetero Drugs, Limited ("Hetero") is a foreign corporation with its principal place of business at 7-2-A2, Hetero Corporate, Industrial Estates,

Sanath Nagar, Hyderabad 500 018, Telangana, India.  At all times material hereto, Hetero has been the parent company of Hetero Labs and has regularly conducted business throughout the United States, including Oklahoma, through its subsidiaries and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded generic valsartan-containing drugs.

17.    Defendant Hetero USA Inc. ("Hetero USA") is a Delaware corporation with its principal place of business at 1035 Centennial Avenue, Piscataway, New Jersey 08854.  At all times material hereto, Hetero USA has been the wholly-owned subsidiary of Hetero and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded generic valsartan-containing drugs throughout the United States, including Oklahoma.

18.    Defendant Camber Pharmaceuticals ("Camber") is a Delaware corporation with its principal place of business at 1031 Centennial Avenue, Piscataway, New Jersey 08854.  At all times material hereto, Camber has been the wholly-owned subsidiary of Hetero and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, misbranded, and/or unapproved valsartan-containing drugs throughout the United States, including Oklahoma.

19.    Collectively, Hetero Labs, Hetero, Hetero USA, and Camber are referred to herein as the "Hetero Defendants."  At all times material hereto, the Hetero Defendants have operated as a unified enterprise in the manufacturing and distribution of contaminated valsartan-containing drugs.

**(3)** Mylan Laboratories, Ltd. Entities

20.    Defendant Mylan Laboratories, Ltd. ("Mylan Laboratories") is a foreign corporation with its principal place of business at Plot No. 564/A/22, Road No. 92, Jubilee Hills 500034, Hyderabad, India.  At all times material hereto, Mylan Laboratories has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded generic valsartan-containing drugs.

21.    Defendant Mylan N.V. ("Mylan") is a global generic and specialty pharmaceuticals company registered in the Netherlands, with principal executive offices in Hatfield, Hertfordshire, UK and a Global Center in Canonsburg, Pennsylvania.  At all times material hereto, Mylan has been the parent company of Mylan Laboratories and has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded generic valsartan-containing drugs.

22.    Defendant Mylan Pharmaceuticals, Inc. ("Mylan Pharmaceuticals") is a West Virginia corporation with its principal place of business at 1500 Corporate Drive, Canonsburg, Pennsylvania 15317.  At all times material hereto, Mylan Pharmaceuticals has been the registered holder of Mylan Laboratories' ANDA for its valsartan-containing drugs and has been engaged in the manufacturing, sale, and distribution of adulterated and/or misbranded generic valsartan-containing drugs throughout the United States, including Oklahoma.

23.     Collectively, Mylan Laboratories, Mylan, and Mylan Pharmaceuticals are referred to herein as the "Mylan Defendants."  At all times material hereto, the Mylan Defendants have operated as a unified enterprise with a vertically integrated supply chain for manufacturing and distributing contaminated valsartan-containing drugs.

**(4)** Aurobindo Pharma, Ltd. Entities

24.     Defendant Aurobindo Pharma, Ltd. ("Aurobindo") is a foreign corporation with its principal place of business at Plot No. 2, Maitrivihar, Ameerpet, Hyderabad-500038 Telangana, India, and a United States headquarters at 279 Princeton Hightstown Road, East Windsor, New Jersey 08520.  At all times material hereto, Aurobindo has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded valsartan-containing drugs.

25.     Defendant Aurobindo Pharma USA, Inc. ("Aurobindo USA") is a Delaware corporation with its principal place of business at 279 Princeton Hightstown Road, East Windsor, New Jersey 08520.  At all times material hereto, Aurobindo USA has been a wholly-owned subsidiary of Aurobindo and has been engaged in the manufacturing, sale, and distribution of contaminated valsartan-containing drugs in the United States, including Oklahoma.

26.     Defendant Aurolife Pharma, LLC ("Aurolife") is a Delaware limited liability company with its principal place of business at 2400 US-130, North Dayton,

New Jersey 08810.  At all times material hereto, Aurolife has been a wholly-owned subsidiary of Aurobindo USA and has been engaged in the manufacturing, sale, and distribution of contaminated valsartan-containing drugs in the United States, including Oklahoma.

27.    Collectively, Aurobindo, Aurobindo USA, and Aurolife are referred to herein as the "Aurobindo Defendants."  At all times material hereto, the Aurobindo Defendants have operated as a unified enterprise with a vertically integrated supply chain for manufacturing and distributing contaminated valsartan-containing drugs.

**(b) Finished-Dose Defendants**

   **(1)** The Teva Defendants

28.    Defendant Teva Pharmaceutical Industries, Ltd. ("Teva") is a foreign company incorporated and headquartered in Petah Tikvah, Israel.  At all times material hereto, Teva has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded generic valsartan-containing drugs.

29.    Defendant Teva Pharmaceuticals USA, Inc. ("Teva USA") is a Delaware corporation with its principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054.  At all times material hereto, Teva USA has been a wholly owned subsidiary of Teva and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded valsartan-containing drugs in the United States, including Oklahoma.

30.    Defendant Actavis, LLC ("Actavis") is a Delaware limited liability company with its principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054.  At all times material hereto, Actavis has been Teva's wholly-owned subsidiary and has been engaged in the manufacturing, sale, and distribution of contaminated valsartan-containing drugs in the United States, including Oklahoma.

31.    Defendant Arrow Pharm Malta Ltd. ("Arrow") is a foreign corporation headquartered at HF62 HalFar Industrial Estate, HalFar, BBG 300, Malta.  At all

times material hereto, Arrow has been wholly owned by Teva and has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded valsartan-containing drugs.

32.    Defendant Actavis Pharma, Inc. ("Actavis Pharma") is a Delaware corporation with its principal place of business at 400 Interpace Parkway, Parsippany, New Jersey 07054.  At all times material hereto, Actavis Pharma has been Teva's wholly-owned subsidiary and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded valsartan-containing drugs in the United States, including Oklahoma.

33.    Collectively, Teva, Teva USA, Arrow, Actavis, and Actavis Pharma are referred to herein as the "Teva Defendants."  At all times material hereto, the Teva Defendants have operated as a unified enterprise in manufacturing and distributing contaminated valsartan-containing drugs.

      **(2)** The Torrent Defendants

34.    Defendant Torrent Private Limited ("Torrent") is a foreign corporation with its principal place of business at Torrent House, Off. Ashram Road, Ahmedabad 380009, Gujarat, India, and a United States headquarters at 150 Allen Road, Suite 102, Basking Ridge, New Jersey 07920.  At all times material hereto, Torrent has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated and/or misbranded valsartan-containing drugs.

35.     Defendant Torrent Pharmaceuticals, Ltd. ("Torrent Pharmaceuticals") is a foreign corporation with its principal place of business at Torrent House, Off. Ashram Road, Ahmedabad 380009, Gujarat, India, and a United States headquarters at 150 Allen Road, Suite 102, Basking Ridge, New Jersey 07920.  At all times material hereto, Torrent Pharmaceuticals has been over seventy percent owned by Torrent and has regularly conducted business throughout the United States, including Oklahoma, and has been engaged in the manufacturing, sale, and distribution of contaminated, adulterated, and/or misbranded valsartan-containing drugs.

36.     Defendant Torrent Pharma, Inc. ("Torrent Pharma") is a Delaware corporation with its principal place of business at 150 Allen Road, Suite 102, Basking Ridge, New Jersey 07920.  At all times material hereto, Torrent Pharma has been a wholly-owned subsidiary of Torrent Pharmaceuticals and has been engaged in the manufacturing, sale, and distribution of contaminated valsartan-containing drugs in the United States, including Oklahoma.

37.     Collectively, Torrent, Torrent Pharmaceuticals, and Torrent Pharma are referred to herein as the "Torrent Defendants."  At all times material hereto, the Torrent Defendants have operated as a unified enterprise in manufacturing and distributing contaminated valsartan-containing drugs.

### (c) Retail Pharmacy Defendants

38.     Defendant Walgreens Boots Alliance, Inc. ("Walgreens") is a national retail pharmacy chain incorporated in Delaware with its principal place of business

at 108 Wilmot Road, Deerfield, Illinois 60015. At all times material hereto, Walgreens has operated retail pharmacies across the United States, including in Oklahoma, and has sold contaminated, adulterated, and/or misbranded valsartan-containing drugs to Plaintiff and other consumers. Walgreens accounts for nearly 20% of the U.S. market for retail prescription drug sales.

39. Defendant CVS Health Corporation ("CVS Health") is a national retail pharmacy chain incorporated in Delaware with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895. At all times material hereto, CVS Health has maintained approximately 9,900 retail pharmacy locations across the United States, including in Oklahoma, and has sold contaminated, adulterated, and/or misbranded valsartan-containing drugs to Plaintiff and other consumers.

40. Defendant Walmart Inc. ("Walmart") is a Delaware corporation with its principal place of business at 702 S.W. 8th Street, Bentonville, Arkansas 72716. At all times material hereto, Walmart has maintained approximately 4,769 retail locations in all fifty states, including Oklahoma, most of which offer prescription pharmaceutical services, and has sold contaminated, adulterated, and/or misbranded valsartan-containing drugs to Plaintiff and other consumers.

41. Collectively, Walgreens, CVS Health, and Walmart are referred to herein as the "Pharmacy Defendants." At all times material hereto, the Pharmacy Defendants have stood in direct privity with consumers and have received payments for the contaminated, adulterated, and/or misbranded valsartan-containing drugs consumed by Plaintiff.

42.     Collectively, the ZHP Defendants, Hetero Defendants, Mylan Defendants, Aurobindo Defendants, Teva Defendants, Torrent Defendants, and Pharmacy Defendants are referred to herein as the "Drug Defendants."

43.     At all times material hereto, all Defendants named above have acted individually and collectively, as part of a joint enterprise, conspiracy, and/or common scheme to manufacture, market, distribute, and sell defective products that have caused significant harm to Plaintiff and other consumers.   Each Defendant had knowledge of or should have known of the defects in their respective products and failed to take appropriate action to protect consumers from foreseeable harm.

## II.

## JURISDICTION AND VENUE

44.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this civil action presents a federal question as Plaintiff presents a civil claim arising under the Constitution, laws, or treaties of the United States.

45.     This Court has supplemental jurisdiction over all other claims that are so related to the claims in this action within such original subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution pursuant to 28 U.S.C. § 1367(a).

46.     Alternatively, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship

between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  Specifically:

      a.  Plaintiff Katherine Roderick is a citizen and resident of Oklahoma.

      b.  Defendants Royal Philips, ZHP, Hetero Labs, Hetero, Aurobindo, Teva, Torrent, and Torrent Pharmaceuticals are foreign corporations organized under the laws of the Netherlands, China, India, India, India, Israel, India, and India, respectively, and are therefore citizens of those foreign countries.

      c.  All remaining corporate Defendants are organized under the laws of states other than Oklahoma, with principal places of business in states other than Oklahoma, making them citizens of states other than Oklahoma.

      d.  No Defendant is a citizen of Oklahoma.

47.    The amount in controversy exceeds $75,000, exclusive of interest and costs, based upon Plaintiff's damages including but not limited to: past and future medical expenses related to her cancer diagnosis and treatment; past and future pain and suffering; mental anguish; loss of earning capacity; loss of enjoyment of life; and other consequential damages resulting from her exposure to carcinogenic substances from both the defective CPAP machine and contaminated valsartan-containing drugs.

48.    This Court has personal jurisdiction over the Philips Defendants because:

a.  The Philips Defendants have purposefully availed themselves of the privilege of conducting business in Oklahoma by designing, manufacturing, marketing, distributing, and selling CPAP machines throughout Oklahoma;

b.  The Philips Defendants have systematically and continuously conducted business in Oklahoma, deriving substantial revenue from Oklahoma residents;

c.  The Philips Defendants' contacts with Oklahoma are substantial and not isolated, as they have marketed and sold thousands of CPAP machines to Oklahoma residents over many years;

d.  Plaintiff's claims arise directly from the Philips Defendants' business activities in Oklahoma, specifically the sale and use of the defective System One (60 series) CPAP Machine by Plaintiff in Oklahoma; and

e.  The exercise of personal jurisdiction over the Philips Defendants is reasonable and does not offend traditional notions of fair play and substantial justice;

49.    This Court has personal jurisdiction over the Drug Defendants because:

a.  The Drug Defendants have purposefully availed themselves of the privilege of conducting business in Oklahoma by manufacturing, marketing, distributing, and selling valsartan-containing drugs throughout Oklahoma;

b. The Drug Defendants have systematically and continuously conducted business in Oklahoma through their distribution networks, deriving substantial revenue from sales to Oklahoma residents;

c. The Drug Defendants' contacts with Oklahoma are substantial and not isolated, as they have sold millions of doses of valsartan-containing drugs to Oklahoma residents over many years;

d. Plaintiff's claims arise directly from the Drug Defendants' business activities in Oklahoma, specifically the sale and consumption of contaminated valsartan-containing drugs by Plaintiff in Oklahoma;

e. The Pharmacy Defendants (Walgreens, CVS Health, and Walmart) maintain numerous retail locations throughout Oklahoma where they directly sell prescription drugs to Oklahoma residents, including the contaminated valsartan-containing drugs consumed by Plaintiff; and

f. The exercise of personal jurisdiction over the Drug Defendants is reasonable and does not offend traditional notions of fair play and substantial justice.

50.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because:

a. A substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district, including Plaintiff's purchase, use, and consumption of the defective CPAP machine and contaminated valsartan-containing drugs in Oklahoma;

---

b.  Plaintiff suffered her injuries in this judicial district as a result of using the defective products while residing in Oklahoma;

c.  The Pharmacy Defendants conduct regular and systematic business in this judicial district through their retail pharmacy locations in Oklahoma where they sold the contaminated drugs to Plaintiff;

d.  All other Defendants have sufficient contacts with this judicial district through their business activities, including the marketing, distribution, and sale of their products to Oklahoma residents; and

e.  A substantial part of the property that is the subject of this action (the defective CPAP machine and contaminated drugs) was located in this judicial district when Plaintiff used and consumed these products.

## III.

## <u>FACTUAL BACKGROUND</u>

51.     Plaintiff used a Philips System One (60 series) CPAP machine beginning in approximately November 2015 as prescribed by her physician to treat sleep apnea.

52.     Plaintiff took valsartan-containing medications as prescribed by her physician to treat hypertension.

53.     The CPAP machine contained polyester-based polyurethane (PE-PUR) foam that degraded and released toxic and carcinogenic substances including toluene diamine, toluene diisocyanate, and volatile organic compounds.

54.     The valsartan medications consumed by Plaintiff were contaminated with carcinogenic nitrosamines including N-nitrosodimethylamine (NDMA) and N-nitrosodiethylamine (NDEA) at levels far exceeding safe limits.

55.     Defendants knew or should have known that their products contained or would release carcinogenic substances but failed to warn Plaintiff or recall the products in a timely manner.

56.     In June 2021, the Philips Defendants recalled millions of CPAP machines due to the risk of foam degradation releasing toxic and carcinogenic chemicals.

57.     Beginning in July 2018, the Drug Defendants recalled valsartan products due to contamination with NDMA and NDEA.

58.     As a result of her exposure to carcinogenic substances from the CPAP machine and contaminated valsartan medications, Plaintiff developed cancer.

59.     Plaintiff has suffered and continues to suffer significant physical injuries, pain and suffering, emotional distress, medical expenses, and other damages as a result of Defendants' conduct.

60.

## IV.

## <u>CLAIMS</u>

### A. <u>Count One: Negligence (Against All Defendants)</u>

61.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

62.     Each Defendant owed a duty to Plaintiff to exercise reasonable and due care in the design, testing, manufacturing, distribution, labeling, marketing,

and sale of their respective products.  This duty included the obligation to use safe materials and manufacturing processes, implement adequate quality control systems, conduct proper safety testing, provide accurate warnings about known risks, and promptly recall dangerous products when defects were discovered.

63.    Each Defendant owed a duty to Plaintiff to ensure that the products they sold in the United States were not contaminated with carcinogenic substances, contained only the ingredients stated on their labels, were manufactured in compliance with current Good Manufacturing Practices (cGMP), and were safe for their intended use.

64.    Defendants' duties of care arose from their position as manufacturers and distributors of medical products upon which patients like Plaintiff reasonably relied for their health and safety.  Defendants were in the best position to know about defects in their products, to prevent contamination during manufacturing, and to warn patients and healthcare providers when problems were discovered.

65.    Each Defendant breached its duty of care in multiple ways, including but not limited to:

> a. Design Defects: Choosing to use dangerous materials and manufacturing processes when safer alternatives were available and feasible;
>
> b. Manufacturing Defects: Implementing and maintaining manufacturing processes that contaminated products with

carcinogenic substances and failing to implement adequate quality

control systems to detect and prevent contamination;

c.  Failure to Test: Failing to conduct adequate safety testing of their

products and failing to test for known contaminants that could

result from their manufacturing processes;

d.  Failure to Warn: Failing to warn patients, healthcare providers, and

regulators about known risks and dangers associated with their

products;

e.  Failure to Recall: Failing to promptly recall dangerous products

when defects were discovered and continuing to sell products they

knew were contaminated with carcinogenic substances;

f.  Data Manipulation: Systematically manipulating, destroying, and

concealing safety data to hide evidence of contamination and

defects from regulators and the public;

g.  Regulatory Deception: Making false statements and certifications

to regulatory agencies to obtain and maintain approvals for

dangerous products.

66.    Defendants' breaches of duty were not isolated incidents but

represented systematic patterns of misconduct that prioritized profits over patient

safety.  Defendants knew or should have known that their conduct created

unreasonable risks of serious harm to patients like Plaintiff.

67.    Defendants acted with reckless and willful disregard for the health and safety of Plaintiff and other patients.  Their conduct was taken with full knowledge of the carcinogenic risks posed by their products and with deliberate indifference to the consequences for patients who relied on these products for their health.

68.    As a direct and proximate result of Defendants' negligent conduct, Plaintiff has suffered severe and permanent injuries including terminal cancer, which has caused and will continue to cause her to suffer pain, disability, disfigurement, mental anguish, loss of enjoyment of life, medical expenses, lost earning capacity, and other damages.

69.    Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

## B. Count Two: Negligence Per Se (Against All Defendants)

70.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

71.    Defendants violated numerous federal statutes and regulations designed to protect patients like Plaintiff, including but not limited to:

      a. 21 U.S.C. § 331(a), which prohibits the introduction into interstate commerce of adulterated or misbranded drugs and devices;

      b. 21 U.S.C. § 351, which defines adulterated drugs and devices and establishes manufacturing standards;

      c. 21 C.F.R. Parts 210 and 211, which establish current Good Manufacturing Practice requirements for pharmaceutical drugs;

d. 21 C.F.R. Part 820, which establishes Quality System Regulations for medical devices;

e. 21 C.F.R. Part 803, which requires manufacturers to report adverse events and safety problems to the FDA;

f. Various FDA guidance documents and industry standards regarding contamination control and safety testing.

72.     These statutes and regulations were enacted specifically to protect patients like Plaintiff from the types of harm that resulted from Defendants' violations.  Plaintiff is within the class of persons the statutes and regulations were designed to protect.

73.     Defendants' violations of these statutory and regulatory requirements constitute negligence per se under Oklahoma law and the laws of other applicable jurisdictions.

74.     As a direct and proximate result of Defendants' violations of applicable laws and regulations, Plaintiff has suffered severe and permanent injuries as described above.

75.     Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

**C. Count Three: Strict Liability – Defective Products (Against All Defendants)**

76.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

77.     The CPAP machine and valsartan medications used by Plaintiff were defective in design and manufacture, rendering them unreasonably dangerous.

78.     The products contained carcinogenic substances and were unfit for their intended use.

79.     Defendants are strictly liable for injuries caused by their defective products.

80.     As a direct and proximate result of the defective products, Plaintiff suffered serious injuries and damages.

81.     Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

**D.  Count Four: Strict Liability - Failure to Warn (Against All Defendants)**

82.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

83.     Defendants had superior knowledge of the risks associated with their products and failed to provide adequate warnings about these risks to Plaintiff, her healthcare providers, and the general public.

84.     Defendants knew or should have known that their products posed serious health risks, including increased cancer risk, but failed to warn users about these dangers.

85.     The warnings provided with Defendants' products were inadequate because they failed to disclose the presence of carcinogenic contaminants and the serious health risks associated with using the products.

86.     Adequate warnings would have altered Plaintiff's decision to use these products and would have prevented her injuries.

87.     Defendants are strictly liable for their failure to provide adequate warnings about the risks of their products.

88.     As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered severe and permanent injuries as described above.

89.     Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

## E. Count Five: Breach of Express Warranty (Against the Philips Defendants and the Drug Defendants)

90.     Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91.     Defendants made express warranties regarding the safety, purity, and fitness of their products through their labeling, marketing materials, regulatory submissions, and other communications.

92.     The Philips Defendants expressly warranted that their CPAP devices "shall be free from defects of workmanship and materials and will perform in accordance with the product specifications" and that their devices were manufactured under strict quality control standards.

93.     The Drug Defendants, by obtaining, maintaining, and representing FDA approval for their generic valsartan products, warranted that their valsartan products met the FDA's standards for generic drugs, including that they were

"therapeutically equivalent" to brand-name medications, contained only the ingredients listed on FDA-approved labels, and met all regulatory standards for "identity, strength, quality, and purity" as required by 21 C.F.R. §§ 211.100, 211.160, and 211.194. Through their regulatory submissions and representations about FDA compliance, the Drug Defendants warranted that their products possessed the characteristics that the FDA requires for generic drug approval.

94.    These express warranties became part of the basis of the bargain for Plaintiff's acquisition and use of Defendants' products.

95.    Defendants breached these express warranties because their products were contaminated with dangerous substances, were not equivalent to their representations, and did not meet the quality and safety standards warranted.

96.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff has suffered severe and permanent injuries as described above.

97.    Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

**F. Count Six: Breach of Implied Warranty of Merchantability (Against All Defendants)**

98.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

99.    At all relevant times, Defendants were merchants with respect to the products sold to Plaintiff within the meaning of applicable commercial law.

100.   By law, Defendants impliedly warranted that their products were merchantable and fit for the ordinary purposes for which such products are used.

101.   Defendants' products were not merchantable because they were contaminated with carcinogenic substances that made them unfit for their ordinary purpose of providing safe medical treatment.

102.   Products contaminated with cancer-causing substances cannot pass without objection in the trade and are not of the quality that buyers have a right to expect.

103.   Defendants breached their implied warranty of merchantability by selling products that were contaminated, adulterated, and unfit for their intended use.

104.   As a direct and proximate result of Defendants' breach of implied warranty of merchantability, Plaintiff has suffered severe and permanent injuries as described above.

105.   Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

## G. Count Seven: Violations of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.) (Against All Defendants)

106.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

107.    The CPAP machine and valsartan medications used by Plaintiff constitute "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

108.    Plaintiff is a "consumer" within the meaning of 15 U.S.C. § 2301(3) as a person entitled under applicable state law to enforce the obligations of Defendants' express and implied warranties.

109.    Defendants are "suppliers" and "warrantors" within the meaning of 15 U.S.C. §§ 2301(4) and (5).

110.    Defendants provided Plaintiff with both express and implied warranties that constitute "warranties" within the meaning of the Magnuson-Moss Warranty Act.

111.    Defendants breached these warranties as described above, violating their obligations under federal law.

112.    As a direct and proximate result of Defendants' violations of the Magnuson-Moss Warranty Act, Plaintiff has suffered damages and is entitled to recovery under 15 U.S.C. § 2310(d)(1).

113.    Plaintiff is entitled to recover damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 2310(d)(2).

**H.  Count Eight: Fraudulent Misrepresentation (Against All Defendants)**

114.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

115.    Defendants made materially false representations of fact regarding the safety, purity, and quality of their products through their marketing materials, labeling, regulatory submissions, and other communications.

116.    These false representations included statements that their products were safe, free from contamination, manufactured according to applicable quality standards, and equivalent to approved reference products.

117.    Defendants knew these representations were false when made, or made them with reckless disregard for their truth or falsity.

118.    Defendants made these false representations with the intent to induce Plaintiff and other consumers to purchase and use their products.

119.    Plaintiff justifiably relied on these false representations in deciding to use Defendants' products.

120.    As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiff has suffered severe and permanent injuries as described above.

121.    Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

## I.   Count Nine: Fraudulent Concealment (Against All Defendants)

122.    Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

123.   Defendants had superior knowledge of material facts regarding the contamination and defects in their products and actively concealed these facts from Plaintiff, healthcare providers, regulators, and the public.

124.   Defendants had a duty to disclose these material facts because of:

    a. Their superior knowledge and exclusive access to information about their products;

    b. Their fiduciary relationship with patients who depended on their products;

    c. Specific regulatory requirements to disclose safety information;

    d. The fact that they had made affirmative representations about safety that were rendered misleading by the concealed information.

125.   Defendants actively concealed material facts by manipulating safety data, destroying quality control records, making false statements to regulators, and failing to disclose known contamination and safety risks.

126.   Plaintiff was unaware of the concealed facts and could not have discovered them through reasonable diligence.

127.   Had the concealed facts been disclosed, Plaintiff would not have used Defendants' products.

128.   As a direct and proximate result of Defendants' fraudulent concealment, Plaintiff has suffered severe and permanent injuries as described above.

129.  Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

**J.  Count Ten: Conspiracy (Against All Defendants)**

130.  Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

131.  Defendants conspired and agreed among themselves to conceal the contamination and defects in their products, manipulate safety data, deceive regulators, and continue selling dangerous products while concealing known risks from patients and healthcare providers.

132.  This conspiracy involved coordinated efforts to:

 a.  Conceal evidence of contamination from regulatory authorities;

 b.  Manipulate and destroy quality control data;

 c.  Continue selling products known to be contaminated;

 d.  Delay recalls and warnings to maximize profits;

 e.  Provide false information to maintain regulatory approvals.

133.  Each Defendant performed overt acts in furtherance of the conspiracy, including the specific acts of misconduct alleged throughout this Complaint.

134.  The conspiracy was undertaken with the intent to harm Plaintiff and other consumers by exposing them to carcinogenic substances while concealing the risks.

135.   As a direct and proximate result of Defendants' conspiracy, Plaintiff has suffered severe and permanent injuries as described above.

136.   Plaintiff seeks compensatory damages, punitive damages, and all other relief deemed just and proper by this Court.

## K. Count Eleven: Violation of the Oklahoma Consumer Protection Act (15 O.S. § 753 et seq.) (Against All Defendants)

137.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

138.   Defendants engaged in deceptive and unfair trade practices in violation of the Oklahoma Consumer Protection Act, including but not limited to:

   a. Misrepresenting the safety, quality, and characteristics of their products;

   b. Failing to disclose material defects and contamination;

   c. Making false statements about compliance with safety standards;

   d. Placing defective and contaminated products into the stream of commerce;

   e. Engaging in fraudulent and deceptive conduct that created a likelihood of confusion and misunderstanding.

139.   Defendants' conduct was fraudulent and deceptive because it created a likelihood of confusion and misunderstanding and had the capacity to deceive ordinary consumers.

140.   Defendants owed Plaintiff a duty to disclose the contamination and defects in their products because these facts were known exclusively to Defendants, were material to reasonable consumers, and Defendants actively concealed them while making contrary representations.

141.   Plaintiff justifiably relied on Defendants' misrepresentations and omissions in deciding to use their products.

142.   As a direct and proximate result of Defendants' violations of the Oklahoma Consumer Protection Act, Plaintiff has suffered actual damages and is entitled to recovery of actual damages, statutory damages, attorney's fees, and other relief provided by law.

## L.  Count Twelve: Punitive Damages (Against All Defendants)

143.   Plaintiff repeats and re-alleges each and every allegation contained in the preceding paragraphs as if fully set forth herein.

144.   Defendants' conduct as alleged herein was willful, wanton, reckless, and demonstrated a conscious disregard for the rights and safety of Plaintiff and other patients.

145.   Defendants acted with actual malice and deliberate indifference to the consequences of their actions, continuing to sell products they knew were contaminated with carcinogenic substances while concealing these risks from patients and regulators.

146.    Defendants' conduct was outrageous and demonstrated such a complete disregard for patient safety that punitive damages are warranted to punish Defendants and deter similar conduct in the future.

147.    Defendants' misconduct involved a systematic pattern of corporate wrongdoing that prioritized profits over patient safety and involved multiple companies, facilities, and years of deliberate deception.

148.    The harm caused by Defendants' conduct extends far beyond Plaintiff to millions of other patients who were exposed to their contaminated and defective products.

149.    Punitive damages are necessary to deter Defendants and other companies from engaging in similar misconduct and to vindicate important public policies regarding patient safety and corporate accountability.

150.    Plaintiff seeks punitive damages in an amount sufficient to punish Defendants and deter similar future conduct.

## V.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable as a matter of right.

## VI.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Katherine Roderick respectfully demands that judgment be entered against Defendants, jointly and severally, as follows:

1. Actual and Compensatory Damages

    a. Past and Future Medical Expenses, including but not limited to:

        i. All costs of cancer diagnosis, treatment, and care

        ii. Oncology services, chemotherapy, radiation therapy, and surgery

        iii. Hospitalization and emergency medical care

        iv. Prescription medications and medical devices

        v. Medical monitoring and surveillance for cancer recurrence

        vi. Rehabilitation and supportive care services

        vii. Home healthcare and nursing services

        viii. All other reasonable and necessary medical expenses related to Plaintiff's cancer and treatment

    b. Past and Future Pain and Suffering, including but not limited to:

        i. Physical pain, discomfort, and suffering caused by cancer

        ii. Pain and suffering from cancer treatment and side effects

        iii. Mental anguish and emotional distress

        iv. Loss of enjoyment of life and diminished quality of life

     v. Fear, anxiety, and emotional trauma related to cancer diagnosis and prognosis

     vi. Economic Losses, including but not limited to:

     vii. Past and future lost wages and earning capacity

     viii. Loss of benefits, including health insurance, retirement contributions, and other employment benefits

     ix. Diminished earning capacity due to illness and treatment

     x. Household services and care expenses

     xi. Transportation costs for medical treatment

     xii. Out-of-pocket expenses related to cancer care

c. Future Damages, including but not limited to:

     i. Projected costs of ongoing medical care and treatment

     ii. Anticipated reduction in life expectancy

     iii. Future pain, suffering, and diminished quality of life

     iv. Future economic losses and diminished earning capacity

2. Punitive Damages

a. Punitive Damages in an amount sufficient to punish Defendants and deter similar conduct, based on Defendants' willful, wanton, reckless, and malicious conduct in:

     i. Knowingly concealing the dangers of their products from patients and regulators

      ii. Continuing to manufacture and sell dangerous products after discovering contamination and defects

      iii. Systematically prioritizing profits over patient safety

      iv. Engaging in fraudulent conduct to conceal evidence of product defects

      v. Demonstrating conscious disregard for patient safety and welfare

3. Statutory Damages and Remedies

    a. Magnuson-Moss Warranty Act Remedies pursuant to 15 U.S.C. § 2310(d), including:

      i. Damages for breach of express and implied warranties

      ii. Attorney's fees and costs as provided by federal law

    b. Oklahoma Consumer Protection Act Remedies pursuant to 15 O.S. § 753 et seq., including:

      i. Actual damages

      ii. Statutory damages as provided by law

      iii. Attorney's fees and costs

      iv. All other relief available under Oklahoma consumer protection law

4. Restitution and Disgorgement

    a. Restitution of all amounts paid by Plaintiff for the defective products

---

    b.  Disgorgement of profits obtained by Defendants from the sale of contaminated and defective products

5. Interest, Attorney's Fees and Costs

    a.  Pre-judgment Interest at the highest rate allowed by law from the date of each loss

    b.  Post-judgment Interest at the rate prescribed by law

    c.  Costs of Court including all filing fees, service costs, and other court costs

    d.  Reasonable Attorney's Fees incurred in prosecuting this action through trial and, if necessary, through appeal

6. Equitable Relief

    a.  Injunctive Relief as appropriate to prevent future harm to consumers

    b.  Medical Monitoring if requested and appropriate under applicable law

7. General Relief

    a.  Such other and further relief as this Court deems just, proper, and equitable under the circumstances

Respectfully submitted,

**BRANUM LAW FIRM, PLLC**

_____
John Branum, OBA No. 20165
Jessica S. Ladd, OBA No. 33821
9600 South May Avenue
Oklahoma City, Oklahoma 73159
Telephone (800) 318-9950
Email all@branumlawfirm.com

**ATTORNEYS FOR PLAINTIFF**